# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 7363 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| Edward Parker, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In June 2013, Edward Parker pleaded guilty to a charge of conspiracy to distribute a controlled substance in violation of 28 U.S.C. § 846. He was then sentenced to a prison term of 160 months and a supervised release period of 10 years. Parker has now filed a *pro se* motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. He asserts claims based on violations of the Fourth Amendment and 18 U.S.C. § 2518, actual innocence, the Government's failure to disclose evidence, and ineffective assistance of counsel. For the reasons stated herein, Parker's § 2255 motion is denied.

## Factual and Procedural Background

In June 2012, Edward Parker and eighteen other defendants were charged by criminal complaint for crimes relating to the sale and possession of cocaine. Compl. at 1–5, No. 12 CR 421, ECF No. 1. The complaint was the culmination of an extensive investigation into a drug-trafficking organization led by Odell Givens, one of Parker's co-defendants. In turn, the investigation of Givens's organization originated from an earlier, separate investigation of a street gang called the

Imperial Insane Vice Lords. One of the targets of this earlier investigation was Nathaniel Hoskins, an alleged leader of the gang. Gov't Resp. at 2, No. 15 CV 7363, ECF No. 7; *see also* Indictment ¶ 5(a), No. 13 CR 0772, ECF No. 2 (indicting Hoskins and twenty-three other defendants affiliated with the Imperial Insane Vice Lords). The investigation of Hoskins led law enforcement agents to seek a court-authorized wiretap for the phone of a man named Jettie Williams.[1] *See* Gov't Resp. at 4–5. Intercepted conversations between Williams and Givens then led agents to suspect that Givens was engaged in drug-trafficking activities. *Id.* In September 2011, the Chicago Police Department and the federal Drug Enforcement Administration commenced their investigation of Givens by obtaining a wiretap for his cell phone. *See generally* Gov't Ex. A, Sept. 2011 Application, No. 12 CR 421, ECF No. 332-1. The investigation of Givens subsequently expanded to include interceptions of conversations on more than a dozen cell phones used by Parker and two other defendants involved in Givens's organization. Compl. ¶ 7 & n.1. All of these interceptions were made pursuant to judicial authorization under 18 U.S.C. § 2518. *Id.*

The criminal complaint that was filed in June 2012 charged Parker and Givens of conspiring with one another to possess and distribute cocaine. *Id.* at 1. As evidence supporting this charge against Parker, the Government relied on "calls in which Parker was intercepted; calls in which other [members of Givens's drug-

---

[1] Williams is not named in the indictment against Hoskins and the twenty-three other affiliates of the Imperial Insane Vice Lords because Williams died before the charges in that case were brought. *See* Mot. Vacate at 2, No. 15 CV 7363, ECF No. 1; Gov't Resp. at 5.

trafficking organization] were intercepted talking about Parker; surveillance; and seizures of controlled substances and U.S. currency." *Id.* at ¶ 15. Parker was arrested and made his initial appearance on June 6, 2012, at which time the Court appointed attorney Eugene Steingold to serve as Parker's counsel. No. 12 CR 421, ECF No. 15. Several months later, Parker testified before a grand jury and was indicted for multiple crimes based on the original complaint. No. 12 CR 421, ECF No. 187.

On June 20, 2013, pursuant to a written plea agreement, Parker pleaded guilty to conspiracy to possess with intent to distribute and to distribute at least 5 kilograms of cocaine and at least 280 grams of cocaine base. Plea Agreement ¶ 5, No. 12 CR 421, ECF No. 215. In the plea agreement, Parker admitted that he had "worked for a narcotics distribution business led by Odell Givens" since the summer of 2010. *Id.* at ¶ 6. Parker's participation in Givens's business included "transport[ing] kilogram quantities of cocaine that Givens received from sources of supply," "stor[ing] cocaine and crack cocaine at his residence," "repackag[ing] powder cocaine for distribution," "cook[ing] powder cocaine into crack cocaine for distribution," "regularly deliver[ing] powder and crack cocaine to customers," and "collect[ing] drug proceeds from customers." *Id.*

Under the terms of the plea agreement, Parker expressly waived the right to challenge his conviction, his sentence, or any pretrial rulings on direct appeal. *Id.* at ¶ 23(b). He also expressly waived the right to collaterally challenge his

3

conviction and sentence in a § 2255 motion, subject to narrow exceptions. *Id*. This collateral-review waiver reads in pertinent part:

> [D]efendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

*Id*. The collateral-review waiver is followed by a paragraph that provides: "Defendant understands that by pleading guilty he is waiving all rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights." *Id*. at ¶ 23(c). The waiver was explained again to Parker at his plea hearing on June 20, 2013, as well as at his sentencing hearing on June 9, 2015. No. 12 CR 421, ECF No. 214, 288.

In exchange for Parker's cooperation with law enforcement, the Government agreed to move the Court for a downward departure pursuant to U.S.S.G. § 5K1.1 for a sentence of 55 percent of the low end of the applicable Guideline range. Plea Agreement ¶¶ 11–13. At Parker's sentencing hearing, the Court sentenced Parker to the agreed-upon term of 160 months' imprisonment. Judgment at 2, No. 12 CR 421, ECF No. 303. On August 20, 2015, Parker filed a *pro se* motion to vacate his conviction and sentence under § 2255.

4

## Legal Standard

Section 2255 provides that a criminal defendant is entitled to relief from his conviction and sentence if "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). A court may deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show" that the defendant is not entitled to relief. *Id.* Relief under § 2255 is available "only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013). Courts liberally construe § 2255 motions filed by *pro se* movants. *Gaylord v. United States*, 829 F.3d 500, 508 (7th Cir. 2016) (citing *Warren v. Baenen*, 712 F.3d 1090, 1099–1100 (7th Cir. 2013)).

## Analysis

**I. Collateral-Review Waiver Pursuant to Parker's Plea Agreement**

Parker advances several arguments in support of his motion to vacate his conviction and sentence under § 2255. His primary argument challenges the legality of the wiretaps used both in the investigation of the Imperial Insane Vice Lords as well as in the investigation of Givens's organization. Specifically, Parker alleges that officers fabricated evidence in the affidavits used to obtain authorization for several of these wiretaps, thereby violating the Fourth

5

Amendment and 18 U.S.C. § 2518, and he claims that evidence obtained through the wiretaps therefore should have been suppressed as the "fruit of a poisonous tree." Mot. Vacate at 3–6, 10–17. In addition, Parker claims that he is entitled to relief because he is actually innocent, because the Government failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and because he received ineffective assistance of counsel. *Id.* at 5, 8, 24–26.

The Government points out, however, that Parker expressly waived his right to collaterally challenge his conviction and sentence in a § 2255 motion under the express terms of his plea agreement, subject to limited exceptions. Gov't Resp. at 1, 3–4; *see also* Plea Agreement ¶ 23(b). "It is well-settled that waivers of direct and collateral review in plea agreements are generally enforceable." *Hurlow v. United States*, 726 F.3d 958, 964 (7th Cir. 2013) (citing *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010); *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)). Courts treat plea agreements like contracts, and plea agreements are "therefore governed by ordinary contract law principles." *United States v. Quintero*, 618 F.3d 746, 751 (7th Cir. 2010). Accordingly, a waiver of collateral review is generally valid and enforceable as long as the language of the waiver is "express and unambiguous" and the waiver is made "knowingly and voluntarily." *Id.*

Here, the waiver in Parker's plea agreement is undeniably express and unambiguous: it specifically states that, by entering into the plea agreement, Parker "waive[d] his right to challenge his conviction and sentence . . . in any collateral attack or future challenge, including but not limited to a motion brought

6

under Title 28, United States Code, Section 2255." Plea Agreement ¶ 23(b). In addition, nothing in the record raises any doubt (and Parker does not dispute) that this waiver was entered into knowingly and voluntarily. The waiver is therefore enforceable, subject to the exceptions that it sets forth for certain claims of involuntariness or ineffective assistance of counsel. *See Quintero*, 618 F.3d at 750–52; *see also Smith v. United States*, No. 13 C 4885, 2013 WL 6632637, at *1–2 (N.D. Ill. Dec. 16, 2013) (enforcing waiver of collateral-review rights pursuant to a plea agreement containing terms identical to the terms of Parker's waiver). Because Parker has not made a claim of involuntariness, his claim for ineffective assistance of counsel is the only claim in his § 2255 motion that can survive. All of his other claims are barred as waived under the plea agreement.

## II. Ineffective Assistance of Counsel

Parker's claim for ineffective assistance of counsel is premised on his attorney's failure to move to suppress evidence allegedly obtained in violation of the Fourth Amendment and 18 U.S.C. § 2518. Mot. Vacate at 24–26. In Parker's own words, "[c]ounsel Steingold was constitutionally ineffective for not moving to suppress intercepted calls on the ground that the government not only failed to establish the necessity for a wiretap but also lied to the Chief Judge to gain access to a wiretap." *Id.* at 25. According to Parker, these lies comprised statements that the "conduct of Givens and Williams [was] criminal in nature" and that "Givens was a subject calling to and from Nathaniel Hoskins['s] phone." *Id.* at 24–25; *see also id.* at 3–4, 20. Parker asserts that "[i]f counsel had properly challenged the wiretap application[,] the proceedings in this case would have been different." *Id.* at 24.

7

### A. Scope of the Collateral-Review Waiver

As a threshold matter, the Government argues that Parker's ineffective-assistance claim is barred by the waiver in his plea agreement, along with all of his other claims, because Parker has not established that "the purported ineffective assistance of counsel related directly to the negotiation of this waiver." Gov't Resp. at 8. Indeed, on its face, the plea agreement states that any ineffective-assistance claim is waived on collateral review unless the claim "relates directly to this waiver or to its negotiation." Plea Agreement ¶ 23(b).

But the Government's argument ignores important Seventh Circuit precedent and therefore misses the mark. The Seventh Circuit has made clear that "appellate and collateral review waivers cannot be invoked against claims that counsel was ineffective in the negotiation of the plea agreement." *Hurlow*, 726 F.3d at 964 (citing *United States v. Jemison*, 237 F.3d 911, 916 n.8 (7th Cir. 2001); *United States v. Hodges*, 259 F.3d 655, 659 n.3 (7th Cir. 2001); *Bridgeman v. United States*, 229 F.3d 589, 591 (7th Cir. 2000)). Thus, when a plea agreement carves out an ineffective-assistance exception to a waiver of appellate or collateral review, the agreement may not narrow the exception so far as to permit only those ineffective-assistance claims that specifically concern the negotiation of the waiver, as opposed to the negotiation of the plea agreement as a whole. *Hurlow*, 726 F.3d at 965–66. In other words, "appellate waivers, no matter how narrowly crafted, do not bar a defendant's claim that he entered into a plea agreement based upon advice of counsel that fell below Sixth Amendment standards." *Smith*, 2013 WL 6632637, at *1 (citing *Hurlow*, 726 F.3d at 964–68). This limitation on the enforceability of such

8

waivers is based on Sixth Amendment principles "dictat[ing] that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness." *Hurlow*, 726 F.3d at 965 (quoting *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999)) (emphasis and internal quotation marks omitted). The Government is therefore incorrect to argue that Parker must claim ineffective assistance specifically with respect to the negotiation of the waiver. Instead, in order for his ineffective-assistance claim to proceed to the merits, it is sufficient for Parker to claim ineffective assistance with respect to the negotiation of his plea agreement as a whole. *Hurlow*, 726 F.3d at 966; *Smith*, 2013 WL 6632637, at *1.

That said, there is some ambiguity as to whether Parker does in fact claim ineffective assistance with respect to the negotiation of his plea agreement as a whole. Not once does his motion explicitly connect his attorney's conduct to the agreement or its negotiation. Parker seems to imply such a connection, however, in his statement that "[i]f counsel had properly challenged the wiretap application[,] the proceedings in this case would have been different." Mot. Vacate at 24. Giving Parker's *pro se* motion a liberal construction, *see Gaylord*, 829 F.3d at 508, this statement can be read in context as implying that "[i]f counsel had properly challenged the wiretap application," Parker might have negotiated his plea agreement "different[ly]" or perhaps might not have pleaded guilty at all. Mot. Vacate at 24–26. Thus, the Court will treat Parker's ineffective-assistance claim as

9

relating to the negotiation of his plea agreement and therefore falling outside the scope of the collateral-review waiver.

The Court now turns to address the merits of Parker's ineffective-assistance claim. For the reasons explained below, the claim fails even with the benefit of this liberal construction.

### B. Merits of Parker's Ineffective-Assistance Claim

Ineffective assistance of counsel is a Sixth Amendment violation that entitles a defendant to relief under § 2255. *Gaylord*, 829 F.3d at 506–09. To establish a claim for ineffective assistance of counsel, a defendant must show both that counsel's performance was so deficient that it could not be considered objectively "reasonable[ ] under prevailing professional norms" and that the defendant suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). The defendant bears "the burden of both proof and persuasion" in establishing deficient performance and prejudice. *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993). When an ineffective-assistance claim is premised on counsel's failure to litigate a Fourth Amendment issue, "the defendant must also prove that his Fourth Amendment claim is meritorious." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005). Additionally, when the defendant has pleaded guilty, he must show prejudice by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir. 2005).

Here, Parker has failed to show prejudice under *Strickland* because he has not proved that a motion to suppress would have been meritorious. *Kimmelman*, 477 U.S. at 375. In support of his claim that counsel should have moved to suppress intercepted phone calls, Parker makes two arguments. First, he argues that intercepted conversations should have been suppressed for failure to comply with 18 U.S.C. § 2518, which requires an application for a court-authorized wiretap to include "a full and complete statement as to whether or not investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); *see also* Mot. Vacate at 10, 22. According to Parker, the Government failed to meet this requirement because "[t]he investigation officers never tried any other investigative procedure to investigate [Parker] or Odell Givens" prior to intercepting phone calls. Mot. Vacate at 10. But the wiretap applications demonstrate otherwise. Supporting affidavits provide highly detailed explanations of "investigative procedures [that] ha[d] been tried and failed," 18 U.S.C. § 2518(1)(c), including procedures involving the use of physical surveillance, confidential informants, pen registers, trap-and-trace devices, mobile tracking devices, and video surveillance. *See, e.g.*, Sept. 2011 Application, Aff. ¶¶ 33–83; Gov't Ex. F, May 2012 Application, Aff. ¶¶ 60–118, No. 12 CR 421, ECF No. 332-6. The Court has been given no reason to doubt the veracity of these detailed explanations in the supporting affidavits. Thus, Parker's allegations of law enforcement's noncompliance with § 2518 are not a basis for finding his suppression claim meritorious.

Parker's second argument is that law enforcement agents' interceptions of phone calls constituted an illegal search and seizure under the Fourth Amendment because agents made fraudulent statements in the affidavits that were used to obtain judicial authorization for the interceptions. Mot. Vacate at 3–6, 10–17. But Parker does not come close to proving the merits of this argument either. He alleges repeatedly in his motion that agents "fabricated information," "deceive[d] the Chief Judge," and gave "perjured testimony" to secure wiretaps, *see* Mot. Vacate at 3, 6, 11–17, but he neither identifies any specific statement in any particular wiretap application as fraudulent nor adduces any evidence tending to support these bald assertions.[2] Rather, he alleges that unspecified wiretap applications incorporated false statements that "conduct of Givens and Williams [was] criminal in nature" and that "Givens was a subject calling to and from Nathaniel Hoskins['s] phone." *Id.* at 24–25; *see also id.* at 3–4, 20.

It is true that the application seeking initial authorization to intercept calls on Givens's phone states in its summary of probable cause that "Givens is a heroin

---

[2]  At various points in the motion, Parker specifically refers to wiretap applications for "target phone five" and "target phone six," as well as a wiretap application from August 26, 2011. Mot. Vacate at 12–13, 15–17. But he does not point to any specific statements or paragraphs in those applications as containing fabricated evidence. In any case, Parker would not have standing to challenge interceptions made pursuant to these wiretap applications, because he was neither "a person who was a party" to these intercepted communications nor "a person against whom the interception[s] [were] directed." 18 U.S.C. §§ 2510(11), 2518(10)(a); *see also United States v. Terry*, 572 F.3d 430, 432 n.2 (7th Cir. 2009). The criminal complaint charging Parker provides a complete list of wiretap applications for the phones on which Parker was intercepted, and none of these wiretap applications appears on that list. Compl. ¶ 7 & n.1.

12

supplier" and that "among his customers is Jettie Williams."[3] Sept. 2011 Application, Aff. ¶ 11. But apart from his unsupported allegations of fraud, Parker has provided no evidence tending to suggest that these statements were fabricated by law enforcement agents. Moreover, Parker acknowledges in his own motion that Williams purchased and used drugs. Mot. Vacate at 2–3 ("[Williams] was calling around trying to borrow petty cash to get to work, and buy drugs."); *id.* at 9 ("The investigating officers never proved that Williams was selling drugs, but it was pro[ved] that . . . he was using drugs."). Williams's use of drugs in Parker's account of the facts is entirely consistent with the passages of the wiretap application for Givens's phone stating that Williams purchased drugs from Givens. Sept. 2011 Application, Aff. ¶ 11. As such, Parker's assertion that these sworn statements were fraudulent is not only wholly unsupported, but also incompatible with the facts woven into Parker's own motion.

Parker's assertion that agents obtained authorization to wiretap phones by fraudulently stating that Givens was in contact with Hoskins is also unfounded. Although the original application for Givens's phone lists Hoskins and other members of the Imperial Insane Vice Lords as investigative targets, *see id.* at ¶ 6, the application explicitly states that "Givens has *not* been intercepted on either of Hoskins's phones," and Hoskins is not mentioned in the summary of probable cause

---

[3] Parker's calls were intercepted on Givens's phone pursuant to this wiretap application, and those interceptions were subsequently used to support further investigation of Parker. Compl. ¶ 15. Parker therefore has standing to challenge the legality of the interceptions made pursuant to this application, assuming that this is indeed one of the unspecified wiretap applications that he intends to challenge through his motion. 18 U.S.C. §§ 2510(11), 2518(10)(a).

supporting the application. *Id.* at ¶¶ 11–12, 38 (emphasis added). Parker has not identified, and the Court has not found, any statement in any wiretap application in which the Government represented that Givens and Hoskins were in contact with one another. As such, Parker's allegation that agents made such a statement—much less that they did so fraudulently—appears to be baseless. Because none of Parker's allegations provides a basis for finding that a motion to suppress would have been meritorious, he has not established prejudice under *Strickland*, and his claim for ineffective assistance of counsel therefore fails. *Kimmelman*, 477 U.S. at 375.

Parker's ineffective-assistance claim is deficient for another reason as well. Even assuming for the sake of argument that Parker could prove a motion to suppress would have been meritorious, his ineffective-assistance claim would still fail because he has not established a reasonable probability that, but for counsel's alleged errors, he would have insisted on going to trial rather than pleading guilty. *Hill*, 474 U.S. at 59. The Seventh Circuit has repeatedly held that when a defendant pleads guilty and later raises an ineffective-assistance claim, "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Cieslowski*, 410 F.3d at 359 (quoting *Berkey v. United States*, 318 F.3d 768, 772–73 (7th Cir. 2003)); *see also Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). Rather, the defendant must "go further and present objective evidence" in support of such an allegation. *Cieslowski*, 410 F.3d at 359. In this case, even with the benefit of a liberal construction, Parker's motion

presents at most only a threadbare allegation that he would not have pleaded guilty if his attorney had moved to suppress the intercepted calls. *See* Mot. Vacate at 24. The motion makes no mention of any objective evidence that might be used to support this conclusory allegation. Accordingly, even if Parker could prove that a motion to suppress would have been meritorious, the allegations in his motion would still be insufficient to establish prejudice as required under *Strickland*. *See Hill*, 474 U.S. at 59; *Cieslowski*, 410 F.3d at 359.

In sum, in order to prevail on his claim for ineffective assistance of counsel, Parker must prove both that a motion to suppress the intercepted calls would have been meritorious and that he would not have pleaded guilty but for counsel's alleged errors. *Hill*, 474 U.S. at 59; *Cieslowski*, 410 F.3d at 360. He has proved neither. As such, Parker cannot establish that he was prejudiced by counsel's performance. His claim for ineffective assistance of counsel therefore fails, *see Strickland*, 466 U.S. at 687–88, and his § 2255 motion must be denied.

## Conclusion

For the reasons stated herein, Parker's motion to vacate his conviction and sentence under § 2255 [1] is denied. The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, because Parker has not made a "substantial showing of the denial of a constitutional right" such that reasonable jurists could debate this Court's resolution of the case. 28 U.S.C. § 2253(c)(2); *Narvaez v. United*

*States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). This case is hereby terminated.

**IT IS SO ORDERED.**   ENTERED   12/2/16

*[signature: John Z. Lee]*

_____

**John Z. Lee**
**United States District Judge**